The first case on our call of the docket is People v. Casey Hammond. It's Agenda No. 1, a consolidated case, 110044110705. And this is Tuesday, September 13, 2011. Before I call the first attorney, I think, as you've agreed, you're going to split your time. The 20 minutes is split and the other 20. We're going to enforce the 10-minute split so nobody uses the other 10 minutes inadvertently. So the timekeeper will warn you before the first 10 minutes is up, and then the red light, as usual, will go off. Not at 20 minutes, as normal, but 10 minutes. You may proceed. Good morning, Your Honors, Counsel, and may it please the Court. I'm Assistant Attorney General Carl Trevel, representing the people of Illinois in the Hammond case. And I will be speaking for 10 minutes, followed by 10 minutes from the appellant in the Hammond case. The appellant in trial court's interpretation of Section 5-6-4I is unconstitutional because it violates the separation of powers. That subsection contains a notice provision. And that provision states that if a probation officer and the supervisor agree to enter into an intermediate sanctions agreement with a probationer who's violated their probation, then notice must be provided to the trial court and to the state's attorney. The proper interpretation of that subsection is that the notice provision allows either the trial court or the state's attorney to object to the intermediate sanctions agreement in the case where either of those elected officials feels that the intermediate sanctions offered are inappropriate to that specific violation. In the Hammond case below, the state's attorney felt that it was a very serious violation because this was a defendant who had been raised in a home where drugs were a problem. His older brother had died from drugs. And the probation violation involved drug use. And in those circumstances, the state's attorney felt it was a serious violation. In the Geider case below ñ Just on the facts of the Hammond case, though. I'm trying to understand the facts. But when did the probation officer file its notice of immediate administrative sanctions? The record's silent as to when the filing took place and as to whether or not they were completed prior to ñ Again, Your Honor, the record's silent as to the actual agreement that was entered, including the dates. But the state's attorney filed a petition to revoke approximately one month after the violation took place. So it appears that ñ When was the ñ when was notice given of the sanctions? Again, Your Honor, the record is, to my knowledge, is silent on that fact. And the agreement that was entered into is not included in the record in the Hammond case. But we do know that the state's attorney filed a ñ Those facts are unknown. How would the Hammond case be helpful in this case? The Hammond case, Your Honor, demonstrates that the state's attorney wanted to object and did so within 30 days, approximately 30 days, of when the violation took place. And it ñ we can imply ñ we can infer from the record that the violation and agreement were entered into within that 30-day period. And therefore, that case is helpful in demonstrating that a state's attorney, again, an elected official charged with prosecuting the offense, is in a situation where they object to the nature of the intermediate sanctions agreement, they can file a timely petition to revoke. And all that the people are asking for is that when the state's attorney has that position, that the trial court allow the petition to revoke to go to a full hearing, where the state's attorney can present evidence from witnesses to the violation, and the trial court can then have a full and complete picture of the nature of the violation before determining the appropriate steps to take. Mr. Treble, is your position the same, whether the sanctions are successfully completed, as opposed to merely offered and accepted? Is your position the same in both of those instances? Our position is the same, Your Honor. We feel that the court would look at the totality of the circumstances in a case where the sanctions had been offered, accepted, and completed, and the nature of the sanction was so lenient that it was unreasonable. And I could foresee a circumstance, it's not presented by any of the three cases before the court now, but I could foresee a circumstance where the nature of the sanction was completed, you know, within minutes of when it was offered, and it was for something as serious as, say, an aggravated assault, which is a misdemeanor offense in Illinois, but it would be something that either the trial court or state's attorney would be very likely to want to pursue a petition to revoke upon. In those circumstances, I think we'd have a difficult case where, in fact, the sanctions would be completed prior to the petition to revoke being filed. In the first case, are my facts right, that only one of the three defendants had merely an offer and acceptance been made and not successful completion? Was there successful completion in two of the cases? What had happened, Your Honor, is after the petition to revoke had been filed in two of the cases, they had been completed prior to the hearing on the petition to revoke, and our position is that that was inappropriate because the trial court should have stayed the performance of the intermediate sanctions agreement until a full hearing could have been held. It's unclear from the facts of the Hammond case whether or not the agreement had actually been completed prior to the filing of the petition to revoke, but that wasn't argued below, so it's just the record is silent in that case. But definitely in the Geither case, in fact, in the Geither case, what had happened was the probation officer had initially argued that a petition to revoke was appropriate and the state's attorney had filed one, and the trial court had, at that time, gone ahead and ordered the probation officer to enforce an intermediate sanctions agreement or to offer an intermediate sanctions agreement to that defendant. In the Geither case, was the court acting pursuant to a local circuit rule, the 11th Circuit to be exact? Is there some tension between the rule and the statute? Yes, Your Honor. The statute must be interpreted to allow the state's attorney and the trial court to object to an intermediate sanctions agreement. And under the Constitution, the state's attorney, as the prosecutor, must be able to make arguments and present evidence in support of that petition to revoke. And any statute or rule that removes that authority from the state's attorney violates the separation of powers because the core power of the prosecutor is the opportunity to bring the people's case, to represent the people faithfully and zealously in a matter where the people have an interest. And, of course, the people have a strong interest in a probation case, which is, although a civil proceeding, a continuation of the underlying criminal action. Are there further questions? May I ask you a question about the statute? Yes. The statute allows the probation department to issue this kind of notice of intermediate sanctions, and the notice must contain the technical violation or violations. Now, can you give me some direction here? Is the expression technical violation defined anywhere in the statute? My sense is in current parlance it usually means something like failure to appear at a point in time or something like that, rather than the commission of a new crime. What does the term technical violation in the statute mean? It's not defined in the statute, Your Honor. And, unfortunately, the statute does make expressly clear that it covers all non-felonious conduct. The probation officer and supervisor can offer intermediate sanctions for any non-felonious conduct, which is why I used the aggravated assault example as a case where a probation officer, under the appellate court's interpretation, could enter into an intermediate sanctions agreement in a case where it might be totally inappropriate to do so. And under the appellate court's interpretation, neither the trial court nor the state's attorney would have any say in objecting to that agreement. It would just be binding. Are any of the violations in the cases before us misdemeanors, or are they all the type of idea of technical in the sense of failing to cooperate with the probation officer? Indeed, they all involve misdemeanors, Your Honor. In the Hammond case, it was drug possession and drug paraphernalia possession, in the Geither case it was obstruction of justice, and in the Donahue case it was use of drugs as well as what might be considered technical violations for failure to report. But that particular defendant had committed, indeed, multiple violations, including leaving the state without permission. So I don't think any of the three below were merely technical. I think they all involved misdemeanors where the state's attorney's objections were appropriate. Unless there's further questions at this time, I'll... You began your argument by saying this is a separation of powers issue. Is it your position that this statute is absolutely unconstitutional as opposed to something that could be remedied by notice or something else? Thank you, Your Honor. The appellate court, I think, misinterpreted our argument below. We are not arguing that the statute as written is unconstitutional. What we're arguing is if the court doesn't respect the notice provision in the statute to mean that the state's attorney in trial court can object to an intermediate sanctions agreement, then that interpretation is unconstitutional because it violates the separation of powers. So are we to write into the statute some notice provision and how much notice and what kind? Who gives it? No, Your Honor. The notice provision speaks for itself. It states that notice must be provided. The chief judges of each circuit, with the guidance of the Administrative Office of Illinois Courts Probation Department, can determine what a reasonable time for notice might be. I was going to supplement the record on appeal with a document I found last week, which was guidelines that were published in 1995 from the AOIC to the different chief judges and probation departments of the different circuit courts that suggests a five-day notice period to both the trial court and the state's attorney. Unless there are further questions, I'll reserve my remaining time for rebuttal and yield to Ms. Hart. Thank you. May it please the court, counsel, my name is Catherine Hart from the Office of the State Appellate Defender, and I represent the appellees Casey Hammond, Christopher Gaither, and Kelly Donahue. This court does not have jurisdiction to hear this appeal, as the three appeals at issue in People v. Hammond are moot. We are here today because the Livingston County State Attorney wants this court to ignore the mootness doctrine and give an advisory opinion infringing on the judiciary's exclusive power over sentencing. As the state itself conceded, this case is moot, due to the fact that all three defendants have been discharged from probation. The state has asserted that the public interest exception to the mootness doctrine applies in this case, but that assertion is incorrect. The public interest exception allows a court to consider an otherwise moot case when the question presented is of a public nature, which it is in this case. There is a need for an authoritative determination for the future guidance of public officers, and there is a likelihood of future recurrence of the question. The public interest exception is narrowly construed and requires a clear showing of each criteria. While the interpretation of Section I of 730 ILCS 5564 does present a question of a public nature, there is no need for an authoritative determination for the future guidance of public officers. There is no conflict in authority about the interpretation of Section I, and indeed there is no other case law on Section I, despite its existence for the past 16 years. Is this likely, though, to recur, at least in Livingston County, unless there's some determination made? There is the possibility that it would recur in Livingston County. And that's not sufficient? No. This Court has said, in Ray Alfred H.H., this Court does not review cases merely to set precedent or guide future litigation. If all that was required under this factor was that the opinion could be of value to future litigants, the factor would be so broad as to virtually eliminate the notion of mootness. Should this Court choose to find an exception to the mootness doctrine, this Court should affirm the decision of the appellate court. I wanted to address first some questions on Casey Hammond. In that case, after the State filed the petition to revoke probation, the defense attorney filed a motion to dismiss, and at that time they alleged that sanctions had been offered, accepted, and completed, and the State never disputed that. So, in fact, as far as we know, the statute was filed absolutely correctly in Casey Hammond. In the Hammond case, there was a criminal offense that underlined the violation, and as the Court said to the State's attorney in that case, the State was free to file a criminal charge and chose not to do so. In part, the State chose not to do so because they wanted this issue to come to the Supreme Court. In its opinion, the appellate court summarized the State's problem with Section I as follows. Essentially, the State's objection is not that the judicial branch has exerted a substantial power belonging to the State's attorney, but that the judicial branch, in exercising its own power, has disregarded the State's attorney. Granting, denying, continuing, modifying, or discontinuing probation is an essential judicial function. Isn't there an argument that while a person is on probation, the sentence is not complete and the State has a right to be involved in any sentencing facet of the case, including changes in probation, changes in conditions of probation? The statute specifically delegates authority to the Court and to probation officers to add additional sanctions for violations of probation. This is a function of the judiciary. If the State feels that the violation is criminal and needs to be punished further, then they are free to file a criminal charge. The legislature created 5564I, and then it references the Eleventh Judicial Circuit's Rule 210, which then further mandates that the Probation Department or the Court Services Department create administrative sanctions guidelines, which are appended to my brief. Everything is very clearly set out. The Court has determined what it feels should be an administrative sanction. And even in Christopher Gaither, which as far as my reading of the record, in that case it was just a violation. He was, what the Court says during the hearing when the State filed the petition to revoke probation, the Court says, my understanding is that he was in a bar, which has violated his probation, but he was over 21. And the Court didn't want to have a petition to revoke probation. The Court wanted administrative sanctions imposed. And the Appellate Court talks about that in its decision, which is ultimately this is the Court's power to affect sentencing. This interpretation of the State's argument is further demonstrated by the State's assertion in its reply brief that this issue is likely to reoccur in Livingston County. The State says in its reply brief at 2, the Livingston County State's Attorney has a strong desire to protect the public from recidivism and to safely rehabilitate defendants with dangerous drug habits. The record also demonstrates that the Circuit Court in Livingston County often prefers the imposition of intermediate sanctions. This quote from the State's reply brief shows the fundamental problem with this appeal. If the Livingston County State's Attorney wishes to protect the public from dangerous drug habits of defendants, then they should prosecute them criminally. They can file a criminal charge. However, in the venue of sentencing, which is the sole province of the judiciary, the Circuit Court's preference for sanctions will prevail because ultimately the Court decides the conditions of a defendant's sentence. As I said, the State is not left without a remedy under the Appellate Court's interpretation of Section I of 5564. But the State does not want their own power to prosecute. The State would like to infringe on the power of the judiciary. Section I of 5564 was created by the legislature to allow the judiciary to manage probation and probation infractions in an efficient manner. Hence the directive in 5561 that the Chief Judge of each circuit adopt a system of structured intermediate sanctions. The Chief Judge of the 11th Circuit, which includes Livingston County, created Rule 210, which requires that each probation department create guidelines for an administrative sanctions program. The Court Services Department of Livingston County has just such a program with detailed guidelines of how the administrative sanctions program should be implemented. The Circuit Court has shown through its own 11th Circuit rules, which were mandated by Section 5561 and the resulting administrative sanctions program, what it considers appropriate responses to certain specific violations of probation. The judiciary's power is consistent with the expressed interest of the legislature, and that power determines whether probation gets modified or sanctions are imposed under certain specific conditions. To allow the State to direct how probation should be supervised and implemented, a power of the judiciary would violate the Separation of Powers Clause. This Court should affirm the decision of the Appellate Court finding no ambiguity or constitutional problems with 730 ILCS 5564I and affirm the trial court's dismissals of the State's petitions to revoke probation. If this Court has no further questions. Thank you, Ms. Hart. May it please the Court and Counsel, my name is Rachel Kinstrand. I'm an Assistant Appellate Defender on behalf of the appellant, and the other consolidated case. I'll speak for 10 minutes and I'll reserve five for rebuttal following my appellant in Hammond. At issue in this case is whether the probation officer had the legal authority to file a petition seeking to revoke Mr. Alberti's probation. And the clear answer to this question is no. Under proper principles, proper application of principles of statutory construction, probation officers do not have the legal authority to file a petition seeking revocation. The plain and ordinary meaning of the applicable statutes, Section 5-6-4 and Section 1110-12, do not give probation officers the authority to file petitions. Even in Section 1110-12, which gives an enumerated list of all of a probation officer's duties, nowhere does a State that appeal has the authority to file a petition seeking revocation. Nor should this Court, properly applying principles of statutory construction, read into the statutes an authority that simply does not exist. Contrary to both the State and the appellate court in this case, neither subsections F nor subsection I provide officers the authority to file petitions seeking to revoke a probationer's probation. Section F deals with the authority to move to modify a probationer's probation. But modification and revocation are two different proceedings. Unlike modification, in a revocation proceeding, the underlying sentence of probation no longer exists, and the defendant must be resentenced on the underlying conviction. Additionally, Section F does not allow for the probation officer to move to modify probation, but rather allows a supervising agency to do so. Like every other agency under Illinois law, it must appear through counsel or risk committing the unauthorized practice of law. Similarly, subsection I does not provide the authority to file petitions seeking revocation either. Section I allows a probation officer to offer a probationer intermediate sanctions for technical violations of his or her probation. It does not, however, give the broader grant of authority to a probation officer to file a petition seeking to revoke with the court. The State argues that the language at the beginning of section I, which states that, quote, instead of filing a violation of probation, an agent or an employee of the supervising agency, with the consent of his or her supervisor, may serve a notice of intermediate sanctions, can be broadly read to give the probation officer the authority to file revocation petitions. The State argues that because the statute states an agent or employee may seek intermediate sanctions, the terms agent or employee must also modify the phrase, instead of filing a violation. But the flaw in the State's argument is that nowhere in the statute are probation officers granted the authority to file petitions seeking to revoke probation, even in the provision of the statute, which deals expressly with the procedures governing revocation hearings. Even the probation officer's authority to offer intermediate sanctions is limited. He or she must get the consent of his or her supervisor. In light of this limitation, section I cannot be fairly interpreted to give the probation officer the broader and the unfettered authority to file a revocation petition. What does it mean? What does the language that you have pointed out that the State has pointed out mean? How do you interpret that sentence? Again, I interpret that sentence as meaning, and I think in Heron or in Kellams, one of the two cases that Alberti relied on, that the authority of the State's attorney to seek revocation, as is acknowledged by the State in this case when they say it's concurrent, is so apparent from all of our experience working with the State's attorney and is consistent with the county's code, which gives the State's attorney the express authority to commence and prosecute all civil and criminal actions, that they didn't even need to put it in there, because their authority is implied as a member of the executive branch. I don't think it's a fair interpretation to say, well, because section I, however poorly worded it may be drafted, said instead of filing a violation of probation, that somehow can be read to give the probation officers the authority. I think the State's attorney's authority is implied in the statute and is consistent with not only their position as a member of the executive branch, but also with the county's code. Do you agree that we would use that as, no matter how poorly written, I mean, doesn't it do violation to English grammar to not interpret it the way the State would have us interpret it? But, I mean, I think the purpose of section I is really, you know, and probably should have been utilized in this case, is to deal with these technical violations. I don't think it speaks to the authority of the State's attorney or the probation officer really either way, and I think, again, I would point out that even in that statute there's a safeguard in there, and that's borne out by the legislative history, which is the probation officer can only give intermediate sanctions with the consent of his or her supervisor. I don't see how you can read that to give them some sort of broader authority to seek revocation, particularly when the likely consequence of a revocation proceeding is imprisonment. Unlike the case with intermediate sanctions, I mean, it's, they're just two totally different proceedings, and I don't think you can read that phrase in the way advocated by the State or as interpreted by the appellate court in my case and in Keller. And as I stated, the... Ultimately, she did, but she didn't file the petition or the supplemental petition. I mean, it's clear on the face of the petitions, both of which are in the common law record in this case, that they were signed by the probation officer. And I'd also point out, as I highlighted in the brief, that in the middle of the hearing, the probation officer had to withdraw one of the allegations. But it's not just the act of filing. I think the larger point here is that, you know, there was no exercise of prosecutorial discretion, which is inherent in commencing a civil or criminal action. And I think had somebody reviewed these allegations, that he failed to report on the day after President's Day and the day after Kasimir Pulaski Day and March 12th, perhaps somebody would have concluded that it wasn't worth the State's limited resources and time to send somebody back to prison for these purely technical violations. But the State could have dismissed the petition. They didn't have to proceed on it. You're right, Your Honor, the State could have dismissed the petition. But from the entire tenor of the facts of this case, the problem, again, is that there was no exercise of discretion at the outset. I mean, we're talking about violations that didn't change from the time the original petition was filed to the time the supplemental petition was filed in November. If Mr. Alberti had been committing another crime or had been, you know, had more violations than the original petition, that would have been the case. If there were more violations, perhaps, than maybe what was evidenced in the record, maybe this would have been worth a revocation. But the fact of the matter is, is that, you know, the State, the prosecutor in this case, basically acted at the behest of whatever the probation officer put in that petition. The State's attorney did have to adopt or ratify, right? I don't think there's any authority for the position advocated by the State that they can adopt or ratify the petition. I mean, I think they went forward on what was filed by the probation officer and then were, you know, caught dealing with... Well, did they have to go forward on what was filed by the probation officer? They didn't, but they did. And again, the point isn't just the filing. And my point is, isn't that tantamount to an adoption or ratification? I don't think there's any authority in any of the cases cited by the State that they can adopt or ratify a petition. I don't know where that authority... If we agree with their argument with respect to adoption or ratification, does that defeat the unauthorized practice of law argument? That, namely, it's the adoption or ratification and proceeding that is practiced in law and not the filing of the petition? No, Your Honor, I don't believe that would defeat the unauthorized practice of law. And again, I would just point out that it's not simply the filing. The commencing or the initiation includes reviewing the allegations before you file a pleading in court seeking relief. In this case, they sought revocation. And again, I don't think there's any authority for that adoption ratification argument that the State set forth and raised. None of those cases support that the State's attorney can just go in and adopt a petition. I think it should have been, like every other criminal proceeding under Illinois law, it should have been considered by the prosecutor. The allegations should have been vetted, reviewed, and then they determine whether or not to go forward on the revocation. Not after the fact. And I think, you know, the circumstances of this case where the prosecutor had to withdraw one of the allegations in the middle of his revocation hearing supports that that's exactly what happened. And in terms of the unauthorized practice of law, Your Honor, you know, that's correct. They, you know, they don't have the authority to practice law. The Illinois Supreme Court makes clear that you have to be a licensed attorney in order to practice law in the court. And I don't think that that would change in this case. I don't think, you know, I think the PO should proceed through the State's attorney. And with that, I'll, I see my time is up, so I'll reserve my time and rebuttal. Good morning, Your Honors. May it please the Court, Counsel. My name is Mary Hodson Buehler. I represent the people of the State of Illinois in the Alberti case. Briefly, the facts of this case were as follows. The defendant was placed on 18 months probation. Three months after being placed on probation, he violated by non-reporting. The way that the court and the State's attorney, the defendant, knew about this was when the probation officer signed a violation of probation petition. The mere signature to put all the parties on notice that the defendant had not followed the terms of his probation. This is what the probation officer does. He watches over, he monitors defendants placed on probation. Approximately six months later, the probation officer signed another petition for violation of probation. Again, notifying the court, the State's attorney, and the defendant that the defendant had not filed several other terms of his probation. The defendant appeared in court, and at that time the State's attorney, as she was on every other court date, was present in court, appeared and the court specifically said to the State's attorney, are you filing the supplemental petition for violation of probation? And she responded yes. In that petition, it referred to the initial violation of probation. The State's attorney, in her discretion, decided which of the violation allegations she was going to proceed on. And then she took the case to hearing. At that point, after using her discretion in determining how she was going to proceed, she ratified the initial petitions that had just been signed by the probation officer. He was not initiating or commencing an action. It was merely notification to the parties that the defendant was not following his probation. Defendant contends that the mere signature, the mere filing of this document by the probation officer, that there is no authority. But defendant's wrong. There is authority. And when you look under the Universal Code of Corrections, subsection I, as has been referred to today, that language, instead of filing a violation of probation, a probation officer may serve the defendant in notice of sanctions. This presupposes the probation officer's authority to file the petition for violation of probation. Gives the probation officer two choices. Either you can serve on the defendant's notice of intermediate sanctions for technical violations, or you can file a violation of probation. Two options for the probation officer. In this case, the probation officer decided that defendant's conduct was so egregious by not reporting, by not following the requirements of a probation, so he filed the violation of probation. There is no separation of powers problem here, because the probation officer is not prosecuting the case. The probation officer signed the document. He's not commencing the action. The action was commenced at the time that the state's attorney reviewed the probation petition, decided to go forward on it. The fact that my opposing counsel said, during the hearing, the state's attorney realized, said, you know, I cannot prove that violation. So this is evidence that the state's attorney is prosecuting the case, is the person who's in charge, because she decided which ones to take to hearing. And then when she realized, as she was prosecuting the case, she didn't have enough evidence, that was it. She withdrew that allegation. Probation, the whole doctrine of probation is unique, because probation officers are arms of the judiciary. They're an agent of the court, but they don't make judicial decisions. Similarly, they act in a quasi-executive role. Per the Probation Officers Act, they are permitted to arrest probationers when they are observed committing a crime or violating probation. But they also are given the authority to file notifications to the court when the defendant has violated probation. The filing of this violation of probation did not divest the state's attorney of its exclusive authority to prosecute cases. Similarly, we are not arguing that the state's attorney doesn't have the concurrent authority to file the petition for violation of probation. Our position is that the probation officer also has the authority. The probation officer knows exactly what the defendant is doing and puts the state's attorney and the defendant and the court on notice that the defendant has not followed. The requirements of probation. Is there any specific statutory authority that says the probation officer is permitted to file a petition? No, other than that subsection I that I referred to, there is none. But there is no statutory authority that says a probation officer cannot. It's clear that the probation officer can't appear in court and actually prosecute. Absolutely, Your Honor. And in our case, the probation officer did not appear in court. It was the state's attorney who prosecuted it, went to a hearing, conducted everything. And in our effect, this all occurred during the probationary period. So defendant did not object during the hearing, did not object with the filing until we got to this appeal. There was no issue whether a probation officer could file the violation for probation, the violation of probation. Even if this court were to determine that the probation officer does not have the authority to file the petition for violation of probation, it would not render the court's judgment of revocation void. It would be merely voidable because the court has maintained jurisdiction throughout this case and the original inception of the original criminal charge. So it would be merely voidable. And defense, it would not be subject to attack because defendant has forfeited, he never raised his claim. And if you look at the record, this was a full-fledged procedurally sound hearing where the defendant had notice, the defendant was represented by private counsel, defendant had the opportunity to confront witnesses, had an opportunity to testify. Everything was done by the book. If there are no questions, we respectfully request based on our argument here and our brief that this court affirm the appellate court's holding that probation officers have the authority to file a violation of probation. Thank you. Thank you. Your Honor, the three cases below in Hammond are all technically moot. However, the public interest exception does apply. It is a public issue. This court's guidance will inform two elected officials, public officials, on how to interpret the intermediate sanctions statute, both the state's attorney of Livingston County and the circuit court in Livingston County where this is, again, likely to recur as seen by it arising in three different cases that occurred over a year apart. So this court should review it under the public interest exception to mootness. Also, we're not asking that the state's attorney be able to direct the trial court or the probation officers in how violations should be handled to use counsel's language. All that we're asking for is that the state's attorney has the right, the constitutional right, to prosecute a petition to revoke probation. Where they exercise their discretion and choose to do so. This gives the state's attorney the opportunity to represent the people by presenting evidence, calling witnesses, and giving the trial court the full picture of what happened as to the nature of the violation that the probationer committed. And so that the state's attorney can demonstrate the seriousness of the violation and argue that intermediate sanctions may not be appropriate in those circumstances. Of course, the ultimate authority of what to do after that hearing rests in the sound discretion of the trial court. It's, of course, not unfettered discretion, but it is very broad discretion to decide what to do given the nature of the violation. And the notice provision of subsection 5-6-4I provides the state's attorney the opportunity to do so. And that's the proper interpretation of the statute. Finally, one of the major points that Hammond made in oral argument today was that the state does not have a role in setting the terms and conditions of probation. The ultimate decision on what those terms and conditions will be, of course, lies with the trial court. But the General Assembly has made clear that the state has a role. And indeed, it's codified in 5-6-4C where it says the state has the burden of going forward with the evidence of proving the violation by the preponderance of the evidence. That's what the state's attorney was trying to do in the three cases below here, and that's what the state's attorney did ultimately in the conviction revocation proceeding. That is the core constitutional role of the state's attorney, and it's one that the trial court and appellate court failed to respect in the three cases below. Therefore, we would ask that this court reverse the appellate court's judgment and trial court's judgment in this case, despite the fact that they are the only court in the United States that has the authority to provide guidance to public officials in the future who face similar circumstances. Thank you, Your Honors. My opposing counsel makes the point that this is just a ministerial act, that it's just a filing, and equates it to reports. Under this court's jurisprudence in Dinger, the pleading is governed by its substance and not its title. Clearly, the petitions filed in this case sought revocation. And second of all, there's no authority for the state's concurrent power argument. Interpreting the statutes where no authority for the probation officers to do this exists, interpreting the statutes in the way that the state wants this court to interpret them would be a violation of separation of powers. Probation officers are members of the judicial, not the executive branch. And because a revocation is essentially a continuation of the underlying criminal case, it's a proceeding that should be handled from the start by the prosecutor. And it would be incongruent to hold that the prosecutor must bear the burden of proof at a hearing to revoke probation. And yet grant somebody other than the prosecutor the authority to file the initiating document. It would be incongruent and unlike any other analogous proceeding under Illinois law. Under the scenario advocated by the state, the prosecutor would act at the behest of the probation officer's determination that revocation was necessary, and based on what the officer alleged the violation to be. There would be no review of the alleged violations to see if they were supported by the evidence prior to petitioning the court, and no exercise of prosecutorial discretion in determining whether the alleged violation even warranted revocation. The state also claims that Elberti has forfeited this issue, and I would respectfully point out to the court that this issue was never raised by the state with the appellate court, so their forfeiture argument is essentially forfeited. But again, this is not an issue of jurisdiction. Elberti hasn't contended that the court didn't have jurisdiction over the revocation hearing. But under many cases, going back to the 1920s, when somebody goes into court that doesn't have the legal authority and seeks to get a judgment against something else, the appropriate remedy is to void the judgment. And I would point out from a practical standpoint that this basically would, we would be asking the court to void the revocation order, not the underlying conviction. Essentially, in a typical case, and assuming that the probationer was still on probation, it would put the parties back in the initial position of the probationer being on probation. And in most circumstances, we're not dealing with violent offenders, and so we would void the revocation order. So this doesn't have sort of the same more problematic issue that it would have if you were dealing with somebody that was on probation for a violent offense. In Elberti's case, he was convicted of possession with intent to deliver of less than 15 grams of heroin. And so the case law essentially supports Elberti's request for relief that you void the revocation. In Illinois and elsewhere, probation is used as a way of restoring a defendant to useful citizenship, and the probationer is supposed to be the counselor. They're not supposed to be the adversary to the probationer. Interpreting the applicable statutes to allow a probation officer to seek revocation undercuts the very purpose of probation. It turns a one-time counselor into an adversary. How can it not when the petition for revocation has been reviewed by the prosecutor? And again, I would point out that the violation at issue in this case illustrates from a practical standpoint why the prosecutor should be the only entity allowed to file a petition seeking revocation. Had the prosecutor reviewed the alleged violations in this case, she may have chosen not to go forward for the failure to report on two days after state holidays. She may have used her discretion and determined that the time and expense of holding a revocation hearing and sending Mr. Elberti to prison was not worth the state's limited resources. And for these reasons, Appellant Elberti urges the court to hold that probation officers do not have the legal authority to file petitions seeking revocation and reverse the order of the lower court revoking his probation. Thank you. Thank you. Consolidated cases number 110044 and 110705, consolidated people versus Hammond, et al., and Elberti shall be taken under advisement as agenda number one. Thank you for your arguments. You may check with Professor Borland on the way out.